UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CYNTHIA F., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 2:18-cv-00191-TSZ-TLF <br><br> REPORT AND RECOMMENDATION <br><br> **Noted for February 22, 2019** |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for a period of disability and disability insurance benefits. This matter has been referred to the undersigned magistrate judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons below, the undersigned recommends that the Court affirm defendant's decision.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for period of disability and disability insurance benefits, alleging that she became disabled beginning January 15, 2015. Administrative Record (AR) 24. That application was denied on initial administrative review and on reconsideration. AR 69-92.

REPORT AND RECOMMENDATION - 1

A hearing was held before an administrative law judge (ALJ), and plaintiff and a vocational expert testified. AR 53-68.

In a written decision, the ALJ found that plaintiff has the following severe impairments: obesity, degenerative disc disease, and degenerative joint disease of the left shoulder and knees. AR 26. The ALJ concluded that plaintiff could perform her past relevant work and therefore that she was not disabled. AR 24-33. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1.

Plaintiff appealed to this Court. Dkt. 1; 20 C.F.R. § 404.981. She seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings. Dkt. 16.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.*

.

ISSUES FOR REVEW

1. Did the ALJ err in finding plaintiff's back conditions did not meet a listing at step three?

2. Did the ALJ err in rejecting opinions from plaintiff's treating physician?

3. Did the ALJ err in discounting plaintiff's testimony about her symptoms?

4. Did the ALJ err in assessing plaintiff's RFC and, consequently, finding plaintiff not disabled at step four?

DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled, and at step four assesses a claimant's residual functional capacity (RFC) to determine whether a claimant can perform past relevant work. If the claimant cannot perform past work, the Commissioner then uses the RFC to determine at step five whether the claimant can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The Commissioner has the burden of proof at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Commissioner can meet this burden by showing that a significant number of jobs that the claimant can perform exist in the national economy. *Id.*; 20 C.F.R. § 404.1520(e).

I.  The ALJ's Findings at Step Three

Plaintiff first contends the ALJ erred at step three of the sequential evaluation process. The ALJ found that the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 28-29. The ALJ discussed listings 1.02 and 1.04. AR 29. He explained that plaintiff's back disorder does not meet listing 1.04 because the "record does not contain evidence of a compromised nerve root or spinal cord, or nerve root compression, accompanied by muscle weakness and/or atrophy." *Id.* He added that plaintiff "has normal muscle tone and bulk, normal sensation, and normal strength in her lower extremities bilaterally." *Id.*

REPORT AND RECOMMENDATION - 3

Plaintiff asserts that the ALJ "does not support [his] finding" that plaintiff's condition does not meet listing 1.04, other than citing a record from Yung Lee, D.O., that shows significant findings but no nerve root compression. Dkt. 16, pp. 2-3; AR 474. Plaintiff asserts that the record contains evidence showing that her back condition meets listing 1.04. She refers to (1) clinical findings (reflexes, strength, antalgic gait, and discomfort), particularly by Drs. Nelson and Matthews; (2) her reports of pain radiating from her lower back to her left leg, AR 53; and (3) the ALJ's failure to further inquire at the hearing, or request an independent medical examination, to seek evidence of other elements of listing 1.04.

At step three, the ALJ must evaluate the claimant's impairments to decide whether they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R § 404.1520(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If they do, then the claimant is deemed disabled. *Id.* The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the listings. *Tackett*, 180 F.3d at 1098. "A generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248, at *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." *Pinto v.*

*Massanari*, 249 F.3d 840, 848 (9th Cir. 2001). "[S]ymptoms alone" will not justify a finding of equivalence. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). The ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff misconstrues the burden of proof at step three. That burden belonged to plaintiff, not the ALJ. *Tackett*, 180 F.3d at 1098. Moreover, the ALJ was not required to state what evidence supported his conclusion as to listing 1.04 as long as his decision contained sufficient findings for a "reviewing court [to] know the basis for the decision." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

This is particularly true where, as here, plaintiff has failed to set forth any reasons as to why her conditions meet or equal the listing criteria. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment). Listing 1.04 requires evidence of a disorder of the spine that "results in compromise of a nerve root . . . or the spinal cord," with one of three additional elements: nerve-root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in inability to walk effectively.[1] Plaintiff does not explain, with citation to evidence, how her back condition satisfies these criteria.

---

[1] Listing 1.04 comprises:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle

Instead, plaintiff alludes to listing 1.04 and to evidence that, she alleges, meets its criteria. Dkt. 16, p. 3. She does not identify any evidence that a nerve root or her spinal cord are compromised; that she has nerve-root compression (she acknowledged that Dr. Lee found she does not, AR 474); that she has spinal arachnoiditis; or that she has lumbar spinal stenosis that, among other requirements, makes her unable to walk effectively. *See* 20 C.F.R. 404, Subpart P, Appendix 1, Listing 1.04.

Further, substantial evidence supports the ALJ's findings that despite a limited range of motion, plaintiff did not show muscle weakness or atrophy in her legs and instead showed normal muscle tone and bulk, normal sensation, and normal strength. AR 29; *see* AR 280, 433, 477.

Plaintiff's asserts that the ALJ erred in not inquiring about the elements of listing 1.04 at the hearing or requesting an independent medical examination to seek further evidence. Dkt. 16, p. 3. Plaintiff is incorrect. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The record before the

---

weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 6

ALJ was neither ambiguous nor inadequate for the ALJ to evaluate plaintiff's condition in comparison to the listings.

Accordingly, plaintiff has not shown any error in the ALJ's determination regarding listing 1.04. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

In a separate section of her brief, plaintiff challenges the ALJ's failure to find that her conditions meet listings 1.02 or 1.03 and that her obesity medically equals a listing.[2] Dkt. 16, p. 9. But plaintiff fails to identify how the ALJ erred and how the evidence supported a finding of disability under those listings. The Court should decline to address this cursory argument. *See Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (declining to review issues not "argued specifically and distinctly in a party's opening brief").

II. The ALJ's Evaluation of Medical Opinion Evidence

Plaintiff asserts that the ALJ erred in rejecting the opinion of her treating physician, Philip Matthews, D.O. She also asserts that the ALJ erred in failing to acknowledge evidence from other treating physicians, including Daniel Nelson, M.D. Dkt. 16, p. 8.

In general, an ALJ gives more weight to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). On the other hand, an ALJ need not accept the opinion of a treating physician if that opinion is brief, conclusory, and inadequately supported by medical findings or by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

---

[2] The ALJ explained that plaintiff does not meet listing 1.02 because "she is able to ambulate effectively and does not have bilateral impairments in each of her upper extremities that prevent her from effectively performing fine and gross motor manipulations." AR 29. The ALJ also noted that "[a]lthough there is no medical listing for obesity, it is considered when evaluating the claimant's limitations at all steps of the sequential evaluation." *Id.* The ALJ stated that he "considered [obesity's] effects in combination with other impairments, and find no listing has been met or equaled." *Id.*

REPORT AND RECOMMENDATION - 7

1   The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted
2   opinion of either a treating or examining physician. *Trevizo*, 871 F.3d at 675 (quoting *Ryan v.*
3   *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining
4   physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific
5   and legitimate reasons that are supported by substantial evidence." *Id.*

6   In June 2015, Dr. Matthews opined in a residual functional capacity report that because
7   of chronic pain in her neck, lower back, left knee, and left shoulder, plaintiff is limited to sitting
8   5 hours and standing or walking 2 hours in an 8-hour workday; that every 30 minutes she would
9   need to get up and walk around for 30 minutes; that she can never lift or carry over 10 pounds;
10  and that she would have significant limitations in using her hands and arms. AR 401-02, 404.
11  (He also stated that the earliest date these limitations applied was the date of his evaluation, June
12  23, 2015. AR 405. After the ALJ decision, Dr. Matthews submitted a letter that indicates that he
13  based his June 2015 opinion on plaintiff's own report about her limitations. AR 8 ("On 6/23/15,
14  [plaintiff] answered questions regarding her functional capacities. I have no information more
15  recent than that. . . .").)

16  The ALJ gave "little weight" to Dr. Matthews's June 2015 opinion. AR 32. He explained,
17  "Dr. Matthews' opinion regarding the claimant's numerous disabling limitations is inconsistent
18  with the minimal and inconsistent physical examination findings, the mild and slight objective
19  findings, and the lack of observations the claimant presented in distress or discomfort even when
20  complaining of serious ongoing pain." AR 32. For similar reasons, the ALJ also gave little
21  weight to a 2006 statement by Dr. Matthews, requesting that plaintiff be excused from jury duty
22  due to her chronic back pain. *Id.*

23  The ALJ did not err in discounting Dr. Matthews's opinions.

24
25

REPORT AND RECOMMENDATION - 8

Support from a physician's own findings and consistency with the rest of the medical record, including objective signs, test results, and providers' observations, are key considerations in weighing medical opinions. *See* 20 C.F.R. § 404.1527(c)(3), (4); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discount a medical opinion that is not adequately supported by objective medical findings); *see also* SSR 96-2p (effective for claims filed before March 27, 2017) ("Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record.").

The record supports the ALJ's findings with respect to Dr. Matthews's opinions that plaintiff is significantly limited in sitting for extended periods, lifting and carrying, and handling objects.[3] Plaintiff consistently showed full strength and no atrophy in her arms and hands. AR 30, 280, 325, 433, 472, 477. She showed discomfort sitting at one visit, shortly after the alleged onset date. AR 325. Immediately before that, her complaints related to standing and walking, AR 294, 300, and doctors did not observe signs of discomfort from sitting at other visits, *see* AR 326-27. Plaintiff was consistently noted to be in no acute or apparent distress. AR 298, 303, 312, 317, 323, 354, 433, 471, 477.

Doctors' impressions from imaging of plaintiff's spine noted mild or small degenerative changes, AR 31, 467-70, and no nerve root compression, AR 474. And shortly before the alleged onset date a treating provider prescribed her regular aerobic exercise. AR 299-300.

Plaintiff does not identify any error in the ALJ's analysis. Plaintiff does not dispute that the ALJ gave specific and legitimate reasons to discount Dr. Matthews's opinions. *See* Dkt. 16,

---

[3] The RFC limited plaintiff to 2 hours per day walking or standing, consistent with Dr. Matthews's opinion. AR 29, 401.

1  pp. 7-8; *Trevizo*, 871 F.3d at 675. Nor does she contend that the ALJ's reasoning lacks

2  substantial evidence to support it.

3  Plaintiff implies that Dr. Matthews's opinion should be entitled to controlling weight

4  because he is her treating physician and his opinion "is well-supported by medical evidence."

5  Dkt. 16, pp. 7-8; *see* SSR 96-2p. But plaintiff does not identify any such supporting evidence or

6  explain how the ALJ's citations fail to support the ALJ's conclusion. *See* Dkt. 16, pp. 7-8;

7  *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not

8  supported by citations to the record or to case authority are generally deemed waived.").

9  Plaintiff also asserts that "the ALJ gives no consideration to Dr. Matthews having found

10 many of [the] same limitations" that other treating providers found and plaintiff testified to. Dkt.

11 16, p. 8. Plaintiff adds that the ALJ did not discuss evidence from other treating providers,

12 including Daniel Nelson, M.D. *Id.* Again, plaintiff does not cite evidence from the record to

13 support her arguments. *See id.* The ALJ actually did cite Dr. Nelson's treatment notes. AR 31

14 (citing AR 317, 323). An ALJ "need not discuss *all* evidence presented," but must not reject

15 "significant probative evidence" without discussion. *Vincent on Behalf of Vincent*, 739 F.2d

16 1393, 1394-95 (9th Cir. 1984). The record does not appear to contain medical opinions on

17 plaintiff's limitations from Dr. Nelson or other treatment providers besides Dr. Matthews.

18 Accordingly, the ALJ did not err in affording little weight to Dr. Matthews' opinion

19 because the ALJ provided specific and legitimate reasons for his decision and substantial

20 evidence supports those reasons. *See Trevizo*, 871 F.3d at 675.

21 III.    The ALJ's Assessment of Plaintiff's Testimony

22 Plaintiff also contends that the ALJ erred in discounting her symptom testimony.

23 In weighing a plaintiff's testimony, an ALJ must use a two-step process. First, the ALJ

24 must determine whether there is objective medical evidence of an underlying impairment that

25

REPORT AND RECOMMENDATION - 10

could reasonably be expected to produce some degree of the alleged symptoms. *Trevizo*, 871 F.3d at 678. If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

Here, plaintiff testified that pain in her back and hip prevent her from sitting for long periods, arthritis in her thumbs makes it difficult to hold a pencil, and pain in her neck makes it difficult to use the telephone or look up. AR 58, 61. She stated that she cannot sit for longer than 30-40 minutes without getting up to walk around for 10-15 minutes. AR 60. She testified that she has difficulty walking long distances. AR 62.

In challenging to the ALJ's decision, plaintiff recapitulates her hearing testimony. Dkt. 16, pp. 6-7.

The ALJ gave clear and convincing reasons to discount plaintiff's testimony. AR 30-31. First, the ALJ found that "minimal and mild physical examination findings . . . are inconsistent with the claimant's allegations of extremely limiting physical conditions." AR 30. Inconsistency with the medical evidence is a permissible factor in evaluating a claimant's testimony. *See* 20 C.F.R. § 404.1529(c)(4).

Substantial evidence supports the ALJ's findings here. With respect to plaintiff's shoulders, arms, and hands, the ALJ cited records showing no atrophy in her arms and good grip strength, while acknowledging that plaintiff showed limited range of motion in her left shoulder and findings of degenerative changes in her cervical spine. AR 30, 280, 433, 472. With respect to plaintiff's knees, the ALJ noted that plaintiff showed normal range of motion in her knees and normal gait. AR 303, 433. The ALJ noted that after surgeries on her knee and left shoulder in

2014, plaintiff reported improved motion in her left shoulder and improved knee pain. AR 30, 327. And with respect to plaintiff's neck, the ALJ found that plaintiff showed no abnormal findings at many physical examinations. AR 30, 298, 317, 323, 433.

Second, the ALJ discounted plaintiff's credibility regarding her ability to sit and walk because plaintiff's providers only observed discomfort sitting and an antalgic gait at one visit, which was "at the same time she reported she was going to apply for disability benefits." AR 31, 325-26, 366, 368. Plaintiff challenges the ALJ's reasoning on this point because it "apparently sanctions [her] for being so disabled she applied for Social Security benefits." Dkt. 16, p. 6. Plaintiff's point is well taken: the ALJ appeared to infer, from the fact that plaintiff presented with discomfort sitting and an antalgic gait at the same time she applied for disability, that her presentation was motivated by seeking benefits and thus less credible. *See* AR 31. Such an inference is not reasonable—by definition, one would expect a claimant's symptoms to worsen on or near the alleged onset of disability.

Nonetheless, the ALJ validly considered the consistency of plaintiff's presentation throughout the record, both before and after the February 2015 visit. *See* 20 C.F.R. § 404.1545(a)(3) ("Evidence we use to assess your [RFC]"). Substantial evidence supports the ALJ's finding that plaintiff did not show signs of discomfort at subsequent visits. AR 366, 368.

Third, the ALJ observed that imaging results showed "slight and mild findings in the claimant's cervical and lumbar spine," citing Dr. Lee's examination. AR 31, 467-71, 478. Imaging showing "mild" degenerative changes can support a finding of inconsistency with a claimant's reports of severe low back pain. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Substantial evidence supports such a finding here. *See* AR 85 (Dr. Platter interpretation of imaging), 467-70, 474 (providers' analyses of imaging).

Fourth, the ALJ found that despite at times reporting extreme back pain at visits, plaintiff "routinely appeared in no acute or apparent distress" and only rarely appeared in distress or discomfort. AR 31; *see* AR 298, 303, 312, 317, 323, 325, 354, 433, 471, 477. The ALJ found the absence of more such findings inconsistent with plaintiff's reports of constant and extreme limitations due to pain. AR 31. This was a valid and supported consideration in discounting plaintiff's testimony. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that notes that claimant was "[w]ell developed, well nourished middle aged female in no acute distress" was "not the sort of description . . . one would expect to accompany a finding that [the claimant] was totally disabled").

Finally, the ALJ found that treatment providers' recommendations that plaintiff exercise and increase her physical activity were inconsistent with plaintiff's allegations that she "cannot perform any significant physical activity due to extreme pain." AR 31. Contrary to plaintiff's assertion, Dkt. 16, p. 6, the ALJ expressly noted that he was *not* finding that plaintiff failed to comply with treatment recommendations, but rather that the providers' recommendations were evidence that plaintiff is not as physically limited as she alleges. The record supports this finding. *See* AR 299; 20 C.F.R. § 404.1529(c)(3)(v) (in evaluating symptoms, ALJ to consider treatment received).

Plaintiff asserts that the forms her treatment providers used at visits made it less likely for them to record observations like an antalgic gait or severe discomfort. Dkt. 16, p. 7. Plaintiff's argument is based on speculation about what plaintiff's treatment providers would have noted if they had used a different form. Plaintiff also asserts that the ALJ failed to acknowledge records showing "antalgic gait, physical discomfort, and strength and reflex limitations." Dkt. 16, p. 7. However, plaintiff does not support this assertion with any citation to the record and, in any case, the ALJ did discuss such records. AR 29-32.

REPORT AND RECOMMENDATION - 13

Accordingly, plaintiff identifies no error in the ALJ's assessment of her testimony.

IV.   The ALJ's RFC Assessment and Step-Four Determination

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ is also required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with some exceptions. AR 29. The ALJ discussed the record and his reasons for this determination, going describing in detail the plaintiff's statements, the medical evidence, and the available medical opinions. *See* AR 29-32. The ALJ's RFC assessment completely and accurately describes all of the plaintiff's functional limitations. Accordingly, the ALJ did not err in assessing plaintiff's RFC.

At step four, the ALJ determined that plaintiff had the RFC to perform the requirements of her past relevant work as a receptionist. AR 32; 20 C.F.R. § 404.1520(f). The ALJ based his determination on the evidence in the record and the vocational expert's testimony that a person of the plaintiff's age, experience, and limitations would be able to perform this job. *Id.* Plaintiff does not identify any error in the ALJ's determination at step four.

CONCLUSION

For the reasons above, the undersigned recommends that the Court find the ALJ properly determined plaintiff to be not disabled, and therefore that it AFFIRM defendant's decision to deny benefits.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **February 22, 2019**, as noted in the caption.

Dated this 6th day of February, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15